UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| CODY ZIPARO<br>7307 Morgan Road<br>Liverpool, New York 13090 | *<br><br>* | Civil Action No. 5:17-cv-708 (GTS/TWD) |
| Plaintiff, | * | |
| v. | * | |
| CSX TRANSPORTATION, INC.<br>500 Water Street<br>Jacksonville, Florida 32202<br>    SERVE: C T Corporation System<br>    111 Eighth Avenue<br>    New York, New York, 10011 | *<br><br>*<br><br>*<br><br>* | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**COMPLAINT PURSUANT TO THE FEDERAL
RAIL SAFETY ACT AND REQUEST FOR JURY TRIAL**

COMES NOW the Plaintiff, Cody Ziparo, by and through counsel, P. Matthew Darby, Esq., H. David Leibensperger, Esq. and Berman, Sobin, Gross, Feldman & Darby LLP and files this Complaint pursuant to the Federal Rail Safety Act, 49 U.S.C. § 20109, and states as follows:

**PARTIES, JURISDICTION AND VENUE**

1. Plaintiff Cody Ziparo is a citizen of New York.

2. Defendant, CSX Transportation, Inc. ("CSX") is a railroad corporation incorporated in the state of Florida, and was at all times relevant to the events described in this Complaint doing substantial business within the jurisdiction of this Court, engaging in the

carrying of freight for hire between and through New York and the several States of the United States.

3. This Court has original federal question subject matter jurisdiction in this case pursuant to 28 U.S.C. § 1331 and the Federal Rail Safety Act, 49 U.S.C. § 20109(d)(3).

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) inasmuch as a substantial part of the events or omissions giving rise to this claim occurred in New York within this judicial district, and 28 U.S.C. § 1391(b)(2) inasmuch as CSX was at all times relevant to the events described in this Complaint doing substantial business within the judicial district of this Court, engaging in the carrying of freight for hire between and through New York and the several States of the United States.

## FACTUAL ALLEGATIONS

A. **Introduction.**

5. This Complaint arises out of violations of the Federal Rail Safety Act, 49 U.S.C. § 20109 ("FRSA"). On or about August 2, 2016, Mr. Ziparo filed a Federal Rail Safety Act ("FRSA") complaint with the United States Department of Labor - Occupational Safety and Health Administration ("OSHA").

6. At the time of CSX's FRSA violations discussed herein, Mr. Ziparo was employed by CSX as a conductor, and qualified as an employee within the meaning of the FRSA.

7. Mr. Ziparo engaged in activity protected by the FRSA, and was subsequently subjected to adverse and discriminatory action as a result of that protected activity.

8. Mr. Ziparo's protected activity concerned his reporting of a work-related hazardous safety condition.

9. Mr. Ziparo began his employment with CSX in 2006, and worked as a conductor until he was terminated from his employment in violation of the FRSA on July 16, 2016.

**B.    Mr. Ziparo is pressured by supervisors to falsify onboard work orders; he reports this conduct to CSX.**

10. While working in CSX's Watertown Yard, Trainmasters Ryan VanBlacrom and Jim Lacey began telling Mr. Ziparo to falsify trains' onboard work orders, and threatening his employment if he did not comply, in January 2016.

11. The onboard work orders show, among other things, the trains' departure times, delivery times, idle times, work completed, and arrival times.

12. Trainmasters VanBlacrom and Lacey told Mr. Ziparo to falsify these documents to make their performances appear better in order to get bonuses.

13. Trainmasters VanBlacrom and Lacey constantly harassed Mr. Ziparo about falsifying the work orders, and threatened him with insubordination charges, putting Mr. Ziparo in constant fear of losing his job and his means of financial support.

14. The hostile work environment created by this conduct by Trainmasters VanBlacrom and Lacey distracted Mr. Ziparo in the workplace from functioning in a safety conscious manner.

15. It is well-established that the type of environment experienced by Mr. Ziparo has an adverse effect upon all aspects of work performance, including safety. Such an environment causes tension between employees and results in poor communication or lack thereof. This situation compromises safety, especially in railroad operations where communications are critical in providing information important to the safety and health of the employees. Animosity and low morale also adversely affect safety by distracting and stressing the involved employees.

16. Mr. Ziparo raised the conduct of Trainmasters VanBlacrom and Lacey as a safety concern several times in April and May 2016 with CSX, including Trainmaster Lacey and VanBlacrom. He and another employee then made ethics complaints regarding the conduct of Trainmasters VanBlacrom and Lacey in May 2016, telling CSX that the pressure of falsifying documents under threat of discharge was affecting his work and making him work unsafely. Mr. Ziparo made everyone at the terminal aware of his safety concerns and ethics complaint, including Trainmaster Lacey.

17. Ethics complaints move up the chain of command to Jerry Lewandowski, who oversaw the trainmasters, and the Division Manager, W.C. Setser.

18. The Watertown Yard is a small operation where everyone knows each other, and word spreads quickly, and so Mr. Ziparo's safety and ethics complaints were widely known.

C. **CSX retaliates against Mr. Ziparo by increasing scrutiny of him, charging him with a rule violation he did not commit, and firing him.**

19. CSX then began putting Mr. Ziparo under extra scrutiny from managers and he essentially had a target on his back.

20. On April 13, 2016, Trainmaster VanBlacrom wrote up Mr. Ziparo and his engineer for not performing a handbrake test when cutting away from cars during switching operations. In the 10 years that Mr. Ziparo worked for CSX, he has known of no requirement to perform a handbrake test each time cars are cut away during switching operations. The following Monday, when Mr. Ziparo came to work, Trainmaster VanBlacrom ominously observed Mr. Ziparo performing switching operations again.

21. Trainmaster VanBlacrom then asked Mr. Ziparo to keep a log of what he does all day long; and Mr. Ziparo complied. Trainmaster VanBlacrom continued to harass Mr. Ziparo claiming that his work was unacceptable.

22. On June 9, 2016, Trainmaster Lacey accused Mr. Ziparo of leaving a switch open on the mainline track at an industry tack, charged him with various rules violations related thereto, and took him out of service pending a hearing on the matter.

23. Mr. Ziparo adamantly maintains that he did not leave the switch open. His engineer observed him in the vicinity of the switch at the time Mr. Ziparo should have been performing the operation, and Mr. Ziparo stated over the radio to the dispatcher that he had performed the correct switch operation, which Mr. Ziparo's engineer overheard.

24. After the switching operation, Mr. Ziparo filled out CSX's Switch Position Awareness Form, wherein he noted that he had performed the switching operation correctly.

25. The lock on the switch in question had previously been broken by vandals.

26. The switch being open was discovered when another train crew approached the switch, saw that it was open, and reported it to the dispatcher. No one was injured in the incident, and there was less than $200 in property damage to the switch.

27. Trainmaster Lacey was unusually close to the location of the switch at the time it was reported, in a location he would not normally be.

28. CSX held an internal "investigative hearing" hearing against Mr. Ziparo on June 16, 2016. The hearing was conducted by a CSX employee with knowledge of Mr. Ziparo's safety and ethics report.

29. At the hearing, Mr. Ziparo testified that he performed the switching operation correctly, and his engineer testified that he saw Mr. Ziparo near the switch, and that Mr. Ziparo had radioed that he performed the switching operation correctly. Trainmaster Lacey chose not to testify.

30. Following the hearing, CSX terminated Mr. Ziparo for the alleged rules violations related to the open switch, and suspended his FRA Conductor Certificate for 30 days.

31. At least one other CSX employee who was similarly asked to falsify onboard work orders, willingly complied with the request and was not retaliated against.

32. Other CSX employees who engaged in conduct the same as or similar to leaving a switch open were not disciplined as harshly as Mr. Ziparo.

33. The severity of the discipline against Mr. Ziparo was well out of bounds of rational discipline. Mr. Ziparo was placed under unwarranted discriminatory scrutiny, charged, disciplined, and discharged unlawfully and purely as a result of CSX's efforts to harass and intimidate Mr. Ziparo and to chill the reporting of safety concerns.

34. CSX's actions demonstrate that it acted with malice or ill will, with knowledge that its actions violated federal law, and/or with reckless disregard or callous indifference to the risk that its actions violated federal law

## COUNT I – Violation of Federal Rail Safety Act

35. Plaintiff adopts and incorporates by reference all the facts and allegations set forth above.

36. Mr. Ziparo engaged in protected activity under the FRSA when he reported, in good faith, a hazardous safety or security condition as outlined herein.

37. CSX had knowledge of all the protected activities referenced herein.

38. CSX took adverse or unfavorable actions against Mr. Ziparo in whole or in part due to his protected activities as outlined herein. In so doing, CSX acted with reckless and callous disregard for the law and Mr. Ziparo's rights under the FRSA.

39. On August 2, 2016, Mr. Ziparo filed an FRSA Complaint with the Secretary of Labor's OSHA Whistleblower Office.

40. The OSHA Whistleblower Office commenced its investigation, and Mr. Ziparo fully cooperated with OSHA's investigation. However, OSHA did not issue a final decision within 210 days after the filing of the FRSA Complaint. The delay was not due to any bad faith on the part of Mr. Ziparo.

41. On or about May 18, 2017 Mr. Ziparo filed with the OSHA Whistleblower Office a Notice of Intent to File Original Action. OSHA sent an acknowledgment of that filing on June 7, 2017.

WHEREFORE, in order to encourage employees to freely report, in good faith, hazardous safety or security conditions without fear of any retaliation, thereby ensuring the Federal Rail Administration has the necessary information to develop and administer an effective rail safety regulatory program that promotes safety in every area of our nation's railroad operations, Plaintiff Ziparo demands a Judgment under the FRSA for all relief necessary to make him whole, including but not limited to:

   a. Expungement of all references to disciplinary action related to the discrimination;
   b. Reinstatement with the same seniority status Plaintiff Ziparo would have had but for the discrimination;
   c. Lost benefits with interest;
   d. Lost wages with interest;
   e. Compensatory damages for medical expenses incurred due to CSX's conduct;
   f. Compensatory damages for economic losses due to CSX's conduct;

g. Compensatory damages for mental anguish, emotional distress, and the physical results thereof, due to CSX's conduct;

h. The statutory maximum of punitive damages pursuant to 49 U.S.C. § 20109(e)(3);

i. Special damages for all litigation costs including expert witness fees and attorney fees; and

j. All other relief necessary to make Plaintiff Ziparo whole.

### PLAINTIFF DEMANDS TRIAL BY JURY

PLAINTIFF, CODY ZIPARO
By His Attorneys,

BY: _____
Daniel R. Santola, Esquire
USDC NDNY Bar Roll # 505852
POWERS & SANTOLA, LLC
Attorneys for Plaintiff
39 North Pearl Street
Albany, NY 12207
Phone: 518-465-5995
Fax : 528-426-4012
E-mail: dsantola@powers-santola.com
Attorneys for Plaintiff

And
P. Matthew Darby, Esquire (to be admitted pro hac vice)
pmdarby@bsgfdlw.com
H. David Leibensperger, Esquire (to be admitted pro hac vice)
hdavid@bsgfdlaw.com
Berman, Sobin, Gross, Feldman & Darby, LLP
1301 York Road, Suite 600
Lutherville, Maryland 21093
Phone: 410-769-5400
Fax: 410-769-9200